UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY NELSON, individually and on behalf of those similarly situated,

Plaintiff,

v.

GREP WASHINGTON, LLC,

Defendant.[1]

C25-0998 TSZ

ORDER

THIS MATTER comes before the Court on plaintiff's motion to remand this class action to King County Superior Court, docket no. 25. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

In April 2025, plaintiff Jeffrey Nelson commenced this litigation in state court, and, in May 2025, defendant GREP Washington, LLC, doing business as Greystar

---

[1] By Minute Order entered September 30, 2025, docket no. 20, the Court dismissed without prejudice plaintiff's claims against unserved defendants GREP Southwest, LLC, Greystar Management Services, LLC, Greystar Development and Construction, L.P., Greystar Development Enhancements, LLC, Greystar SeaTac Development, LLC, Greystar GP II, LLC, Greystar RS NW, LLC, and Greystar RS West, LLC. Although such defendants appear in the caption of plaintiff's Amended Complaint, docket no. 21, they are not identified within the operative pleading, and plaintiff makes no claim against them. The Clerk is DIRECTED to update the docket to reflect that the claims against these entities have been dismissed, and all future filings shall reflect that only one defendant remains, namely GREP Washington, LLC.

ORDER - 1

("Greystar") timely removed the case to this District. *See* Notice of Removal (docket no. 1); Compl. (docket no. 1-2). According to his pleadings, plaintiff leased an apartment managed by Greystar from September 2020 until April 2024. Compl. at ¶¶ 2.1–2.4 & 2.10 (docket no. 1-2); Am. Compl. at ¶¶ 2.1–2.4 & 2.10 (docket no. 21). Plaintiff has explained that he moved out of the apartment before the lease ended in September 2024 because a pipe had burst in the apartment, causing damage to the unit and his personal belongings, and, over the next several months, Greystar failed to effect repairs; during this period, plaintiff stayed in a hotel at his own expense. Compl. at ¶¶ 2.7–2.10; Am. Compl. at ¶¶ 2.7–2.10. When plaintiff gave notice that he was vacating the premises, Greystar demanded that plaintiff pay a non-refundable "buy-out" fee of $3,420, and when he declined to do so, Greystar kept plaintiff's security deposit of $250, treating it as a "credit" toward the "buy-out" fee. Compl. at ¶¶ 2.6 & 2.11–2.16; Am. Compl. at ¶¶ 2.6 & 2.11–2.16; *see also* Apartment Lease Contract dated Sep. 6, 2023, at ¶ 4, Ex. A to Compl. & Am. Compl. (docket nos. 1-2 & 21-1) (setting forth the amount of the security deposit).

Plaintiff filed suit in King County Superior Court on behalf of himself and similarly situated tenants "who moved out prior to the end of their lease term and who were charged and/or paid money toward, or had some or all of their security deposits applied to, a 'buy-out' fee, 'reletting charge,' and/or future rent." Compl. at ¶ 2.21. Greystar removed the matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), alleging that minimal diversity exists because plaintiff and Greystar are citizens of different states, the class exceeds the threshold of 100 members, and the

ORDER - 2

1 amount in controversy is more than $5 million.  See Notice of Removal at ¶¶ 2, 26–29, 32, 34, & 37 (docket no. 1).  A little over a month later, on June 30, 2025, Greystar filed a motion to dismiss, which the Court denied in part and granted in part by Minute Order entered September 30, 2025, docket no. 20.  The Court denied Greystar's motion to dismiss plaintiff's claims under Washington's (i) Consumer Protection Act ("CPA") and (ii) Residential Landlord-Tenant Act ("RLTA"), but struck plaintiff's class allegation without prejudice and with leave to amend to "identify a class with geographic, temporal, and other appropriate limitations."  See Minute Order at ¶¶ 1(a)–(d) (docket no. 20).  On October 3, 2025, plaintiff filed his Amended Complaint, which proposes two classes, a CPA class and an RLTA class, both of which are limited to tenants who lived in properties in Washington that were managed by Greystar and who, after April 21, 2022, "were charged and/or paid money toward, or had some or all of their security deposits applied to, a 'buy-out' fee, 'reletting charge,' and/or future rent."  See Am. Compl. at ¶ 2.21 (docket no. 21).

Less than a week later, on October 9, 2025, plaintiff moved to remand this case to state court, asserting that the Court lacks subject matter jurisdiction.  Plaintiff contends that Greystar has not satisfied its burden of establishing the statutory minimum amount in controversy.  In response to plaintiff's motion, Greystar supplied a two-page declaration by Rita Burden, a director for Greystar, that contains only two paragraphs, the first of which identifies Burden and the second of which states as follows:

> GREP Washington currently manages over 180 properties in the State of Washington on behalf of third-party property owners.  I have reviewed charges to residents of a small sampling of those properties (including the

ORDER - 3

>property at which Plaintiff Jeffrey Nelson resided—Park on 20th).  Based on this review, at least $5,000,000 was charged by third-party property owners in early termination fees, which Plaintiff characterizes as "buy-out" fees, "reletting charges," and/or future rent over the last approximately four years.  The charges reviewed do not include the nuances regarding each resident's tenancy and ledgers, as the circumstances regarding each resident's tenancy can vary drastically and would require a detailed review of the resident's ledger and lease file to ascertain the details surrounding the early lease termination and corresponding charges associated with same.

Burden Decl. at ¶ 2 (docket no. 31).  The only other evidence that has been proffered by Greystar to support the jurisdictional amount is the declaration of one of Greystar's attorneys, which accompanied the Notice of Removal.  <u>See</u> Neuman Decl. (docket no. 2).  In this declaration, counsel for Greystar represented that he has "first-hand, personal knowledge of" and "would be competent to testify" about the following information:

>12. . . . . GREP Washington currently manages over 180 properties in the State of Washington on behalf of third-party property owners.  Based on certain information from a selection of ten properties, in addition to the subject property Plaintiff resided at, approximately or at least $5,300,000 was charged by third-party property owners in early termination fees, which Plaintiff characterizes as "buy-out" fees, "reletting charges," and/or future rent over the last approximately four years.
>
>13. More than 600 unique individuals at those eleven properties were charged early termination fees by respective third-party property owners in the last four years, which Plaintiff appears to characterize as "buy-out" fees, "reletting charges," and/or "future rent."

Neumann Decl. at ¶¶ 12–13 (docket no. 2).  Assuming the accuracy of Neumann's figures, the average amount charged to each lease-breaking tenant in the sample was $8,833.33 (<u>i.e.</u>, $5.3 million ÷ 600).

**Discussion**

When a defendant removes a case to federal court, it need make only a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  <u>See</u> <u>Moe</u>

ORDER - 4

*v. GEICO Indem. Co.*, 73 F.4th 757, 762 (9th Cir. 2023) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197–98 (9th Cir. 2015). When, however, the asserted amount in controversy is challenged, "more is required." *Moe*, 73 F.4th at 762. In such event, the burden is on the defendant to establish by a preponderance of the evidence that the jurisdictional minimum is met. *Id.* A defendant may not rely on "mere speculation and conjecture" or on unreasonable assumptions in calculating the amount in controversy, but rather must submit affidavits, declarations, or other summary-judgment-type materials. *See Ibarra*, 775 F.3d at 1197.

A plaintiff can prevail on a factual challenge to the truth of the defendant's jurisdictional allegations by making "a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020). In this matter, plaintiff has done exactly what the *Harris* Court envisioned. In both the declaration filed with its Notice of Removal and the declaration submitted along with its response to plaintiff's motion, Greystar described only amounts that were "charged," as opposed to funds that were collected by Greystar. The amounts "charged" or demanded by Greystar do not constitute the amount in controversy.[2] An amount in controversy encompasses the relief potentially due to a

---

[2] Greystar's reliance on *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395 (9th Cir. 2010), is misplaced. In *Lewis*, the plaintiff alleged that the defendant, Verizon Communications, Inc. ("Verizon"), had billed her for services (*i.e.*, "premium content," which might have included, for example, "weather and traffic reports, sports scores, stock tips, and jokes") that she never

ORDER - 5

1 victorious plaintiff.  See Moe, 73 F.4th at 761–62.  Neither plaintiff nor any putative class

2 member would be entitled to recover from Greystar any buy-out fees, reletting charges,

3 and/or future rents that they did not in fact pay.  Indeed, what plaintiff remitted to

4 Greystar was merely his $250 security deposit, and assuming that Greystar retained the

5 security deposits of each of the 600 individuals in its sample from 11 of its managed

6 properties, the total would be only $150,000, far less than the $5 million threshold for

7 CAFA jurisdiction.

8       In computing the amount in controversy, Greystar has relied on the assumption

9 that tenants whose leases were prematurely terminated actually paid the average amount

10 ($8,833.33) solicited by Greystar.  Given that this per capita figure is more than five

11 times the monthly amount that plaintiff was paying to lease his apartment ($1,745.00),

12 see Am. Compl. at ¶ 2.4 (docket no. 21), and the possible scenarios pursuant to which

13 tenants might have vacated their units before their leases ended, including eviction for

14

15

16 requested.  See id. at 397.  The plaintiff described these entries on her Verizon bills as "unauthorized" charges.  Id.  Verizon explained via a declaration that, during the relevant time period, its landline telephone subscribers in California were billed more than $5 million on

17 behalf of Enhanced Services Billing, Inc. ("ESBI"), an "aggregator" for third-party vendors who offer telephone-related services.  See id. at 397.  The plaintiff did not allege that she and/or the

18 putative class members declined to pay the "unauthorized" charges on their Verizon bills or that the class, if it prevailed, would be entitled to less than Verizon's total ESBI billings.  Id. at 398.

19 In focusing on the term "charge" to draw an analogy to this case, Greystar has overlooked the context in which the word appears in Lewis, namely as a noun, i.e., as a line item on Verizon's

20 bill, rather than as a verb.  In contrast, Greystar's declarations employ "charged" as a past-tense verb meaning "demanded."  See Black's Law Dictionary 292 (12th ed. 2024) (indicating that the verb "charge" means "to demand a fee"); see also Am. Acceptance Corp. v. Schoenthaler, 391

21 F.2d 64, 74 & n.4 (5th Cir. 1968) (defining "charge" as "to demand" and observing that "the ordinary meaning of 'charge' is not sufficiently broad to contemplate the requirement of actual

22 payment").

23

ORDER - 6

non-payment of rent, the Court concludes that Greystar's assumption is unreasonable and unsupported by a preponderance of the evidence. As in <u>Harris</u>, Greystar was afforded an opportunity to present evidence concerning the amount in controversy, <u>see</u> 980 F.3d at 702 (distinguishing <u>Ibarra</u>, 775 F.3d at 1195–99), but it has failed to satisfy its burden of demonstrating that this matter involves more than $5 million in controversy, and thus, this action will be remanded for lack of subject matter jurisdiction.

**<u>Conclusion</u>**

For the foregoing reasons, the Court ORDERS:

(1) Plaintiff's motion to remand, docket no. 25, is GRANTED, and this case is REMANDED to King County Superior Court, effective fourteen (14) days after the date of entry of this Order;

(2) The initial case deadlines are STRICKEN, defendant's motion for extension of such deadlines, docket no. 35, is STRICKEN as moot, and defendant's motion to strike or dismiss class claims, docket no. 28, is reserved for the King County Superior Court to address on remand; and

(3) The Clerk is directed to CLOSE this case and to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 24th day of November, 2025.

_____
Thomas S. Zilly
United States District Judge

ORDER - 7